[Cite as *In re A.R.*, 2019-Ohio-389.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTERS OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| A.R. | : | Hon. Craig R. Baldwin, J. |
| B.R. | : | Hon. Patricia A. Delaney, J. |
| W.R. | : | |
| | : | |
| | : | Case No. 2018CA00091 |
| | : | 2018CA00097 |
| | : | 2018CA00098 |
| | : | |
| | : | O P I N I O N |
| | : | |

CHARACTER OF PROCEEDING:    Appeal from the Stark County Court
of Common Pleas, Family Court
Division, Case Nos. 2016JCV1124,
2016JCV1125, 2016JCV1126

JUDGMENT:    Affirmed

DATE OF JUDGMENT:    February 6, 2019

APPEARANCES:

For Plaintiff-Appellant Judi Morris          For Defendant-Appellee

BETH A. LIGGETT                              JAMES B. PHILLIPS
Stark County Public Defender                 Stark County Department
201 Cleveland Ave. S.W., Suite 104           of Job and Family Services
Canton, Ohio 44702                           221 Third St. S.E.
                                             Canton, Ohio 44702

*Baldwin, J.*

{¶1}   Appellant,  Mother of the three juveniles who are the subject of this case, appeals the decision of the Stark County Court of Common Pleas, Family Court Division, granting the state's motion for permanent custody of B.R. and his siblings, W.R. and A.R. The appellee is the State of Ohio.

## STATEMENT OF FACTS AND THE CASE

{¶2}   Appellant's children, B.R., W.R., and A.R., were taken into the temporary custody of Stark County Department of Jobs and Family Services (Agency) in December 2016 after an unsuccessful non-court intervention beginning in April 2016 failed to resolve the issues brought to the attention of the Agency. A case plan was established and approved but the Agency concluded that mother failed to make sufficient progress toward completion of the plan and, in April 2018, filed for permanent custody. After a hearing in June 2018 permanent custody of the children was granted to the Agency. Appellant contends she was making progress on the plan and should be allotted an additional six months to complete the goals and regain custody of her children.

{¶3}   Appellant has a history with the Agency beginning before 2000, but despite continued contact and services, the issues regarding parenting remained unresolved. Appellant lost custody of three children in 2001 due to medical neglect and abuse and was convicted of child endangering.  The Agency received multiple complaints of neglect and maltreatment of A.R. since her birth in 2003 and both A.R. and B.R were removed from the appellant's care in 2005 due to allegations of neglect.  Appellant completed a case plan in 2006 and the children were returned to her custody, but the Agency

continued to receive calls reporting concerns about the emotional, medical and physical mistreatment of the children.

{¶4} The Agency provided services in a non-court related case beginning in April 2016, but the attempt to resolve the problems brought to the Agency's attention was unsuccessful.  The Agency received additional reports of neglect and dependency of the children as well as allegations of abuse by their father who allegedly choked B.R.  On December 6, 2016, the Agency filed a complaint alleging the children were dependent and neglected.  An ex parte order was granted, putting the children in the temporary custody of the Agency.  The complaint came on for hearing and the Agency dismissed the allegation of neglect and appellant admitted to the dependency of the children.  The father did not appear at the hearing and the state presented evidence regarding his parental rights and responsibilities.  The trial court found the children dependent.

{¶5} A case plan to reunify the children with appellant was submitted by the Agency and approved by the Court. The plan required appellant to complete a parenting evaluation at Northeast Ohio Behavioral Health. Appellant completed the evaluation and was offered the following case plan services: complete a drug/alcohol assessment and follow all recommendations; complete Goodwill Parenting; participate in anger management at Free Space; and maintain stable housing and income. The case plan was filed on January 4, 2017 and was incorporated into the order granting the agency temporary custody on March 1, 2017. An amended case plan was filed on June 2, 2017 and, on November 1, 2017, the agency filed a motion to extend temporary custody.

{¶6} Appellant made minimal progress toward the completion of her case plan over the period of time in which the children were in temporary custody. She successfully

completed the drug and alcohol assessment and there were no further issues regarding the abuse of drugs or alcohol. However, her compliance with the remaining and more important elements of her case plan fell short of fulfilling any of the requirements. Aimee Thomas, Ph.D., J.D., PCC-S, the psychologist and professional licensed clinical counsel that evaluated appellant, concluded that appellant had not made successful progress toward the resolution of the issues that led to the removal of the children.  The case worker assigned to appellant felt that additional time would not alter the status of the case and the evidence that appellant has received some of the same services in the past provides significant support to her conclusion.

{¶7}    Appellant appeared at all appointments and visits with minor exceptions and the witnesses for the state conceded that her attendance was appropriate.  Despite her regular attendance at the Good Will Parenting Program and Free Space Anger Management, she failed to make any progress toward resolving the problems that caused the children to be removed from the home.  She failed to complete even a minimal number of course requirements at the Good Will Parenting Program, was unable to articulate and work toward goals and failed to internalize the information provided and use it to properly parent and interact with her children.

{¶8}    Appellant did appear at scheduled visits with her children, but did not interact with them, even after staff intervened.  She would not speak to the children unless they first spoke with her.  Visitation with B.R. and W.R. was terminated at the recommendation of the children's therapist, who believed the visits were counterproductive to the children's progress, the children had behavior problems after the visit and they told their therapists they did not want to continue visits with appellant. The

last visit with B.R. was March 7, 2017 and the last visit with W.R. was September 29, 2017. From that date until the hearing on the motion for permanent custody appellant did not request a visit and there is nothing in the record to show that she had any contact with either B.R. or W.R. in that time.

{¶9} Appellant attended anger management classes and completed the program, but failed to make any progress. She had no insight into the impact of abuse on the children and made no progress toward recognizing how abuse and neglect affected them. She refused to accept any responsibility for the inappropriate physical disciplining of the children, casting the blame on the children's behavior problems.

{¶10} Appellant was currently residing with two people who had been convicted of child endangerment, in a home that was found to be unsafe for the children during a planned visit. Appellant had received instruction regarding how to prepare the home for the return of the children, the opportunity to make the changes and notice of the date of the visit and still failed to prepare a suitable space for the children.

{¶11} The children, B.R., W.R. and A.R. suffered from multiple problems that would make parenting them difficult for any person. B.R. suffers from suicidal and homicidal ideations, depressive disorder, ADHD, autism spectrum disorder and is intellectually disabled. A.R. has major depressive disorder, destructive mood dysregulation disorder, has expressed suicidal and homicidal ideations, and had been hospitalized as a result. W.R. is intellectually disabled, has ADHD, seizures, unspecified affective mood disorder and PTSD. These problems made it even more imperative for appellant to work diligently to address the issues that led to the removal of the children

from the home. Her failure to make any progress led the case worker to conclude that appellant could not safely care for any of the children.

**{¶12}** The Agency filed a motion seeking permanent custody of the children on April 27, 2018 and the matter was heard on June 12, 2018.  The trial court terminated appellant's parental rights and granted permanent custody to the Agency on June 14, 2018 and appellant filed a timely appeal and submitted three assignments of error:

**{¶13}** "I. THE TRIAL COURT'S DECISION THAT SCDJFS MET THE STATUTORY FINDINGS FOR PERMANENT CUSTODY IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶14}** "II. SCDJFS' WITHHOLDING OF VISITATION DOES NOT CONSTITUTE ABANDONMENT BY APPELLANT."

**{¶15}** "III. THE TRIAL COURT'S DECESION THAT TERMINATION OF PARENTAL RIGHTS WAS IN THE BEST INTEREST OF THE CHILDREN IS AGAINST THE MAINIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

## ANALYSIS

**{¶16}** We will address appellant's first and third assignments of error together as they both claim the decision of the trial court was against the manifest weight of the evidence and was based upon insufficient evidence.  As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being

against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52; *Eastley v. Volkman,* 132 Ohio St.3d 328, 972 N.E.2d 517, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21.

{¶17} While not clearly stated in her assignments of error, the remedy appellant requests is an extension of time to complete the tasks described in the case plan, indirectly admitting that she has not completed the requirements of the case plan despite her assertions regarding the progress she has made over the sixteen months that the children have been in the temporary custody of the state.  The decision to grant or deny an extension of temporary custody lies in the discretion of the juvenile court. *In re P.B., 9th Dist.* Summit No. 23276, 2006–Ohio–5419, ¶ 36, citing R.C. 2151.415(D)(1) and (2). The juvenile court is authorized to exercise its discretion to extend temporary custody only if it finds, by clear and convincing evidence, the following three things: " '(1) that such an extension is in the best interests of the child, (2) that there has been significant progress on the case plan, and (3) that there is reasonable cause to believe that the child will be reunified with a parent or otherwise permanently placed within the period of

extension.' " *In re J.P.–M.*, 9th Dist. Summit Nos. 23694 and 23714, 2007–Ohio–5412, ¶ 12, quoting *In re P.B.* at ¶ 36. Before the juvenile court may grant either permanent custody or a six-month extension of temporary custody, it must conduct a best interest analysis. *In re S.D.,* 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016–Ohio– 1493, ¶ 30. Accordingly, "[i]f permanent custody was in the children's best interests, the alternative disposition of extending temporary custody was not." Id., citing *In re I.A.,* 9th Dist. Summit No. 26642, 2013–Ohio–360, ¶ 10; see also *In re N.M.*, 9th Dist. Summit No. 28118, 2016–Ohio–5212, ¶ 18.

**{¶18}** We note that appellant presented no evidence to support her contention that it would be in the best interest of the children to extend her case plan for an additional six months.  We find that the record does not contain clear and convincing evidence that appellant has made significant progress on the case plan, or that there is reasonable cause to believe that the children will be reunified with appellant within the period of extension. The appellant relies upon her prior experience completing a court imposed case plan in 2006 as some evidence that she is capable of complying with the state's requirements, given time.  Appellant provided little detail regarding that contact with the state in the 2005-2006 time period, and the lone fact that she has completed a case plan over ten years ago can just as easily be interpreted as evidence that she failed to retain any of the information provided by that experience.  That interpretation,  combined with the evidence that the Agency attempted to resolve this matter with an out of court case plan for six months leads inexorably to the conclusion that an additional six months is unlikely to result in a reunification of the children with appellant.  We cannot find that there

is clear and convincing evidence that an extension is in the best interest of the children, so we consider whether the trial court's award of permanent custody serves that interest.

**{¶19}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶20}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

**{¶21}** In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard

for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶22}** Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶23}** If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

**{¶24}** As set forth in our statement of the facts and case above, we find there was sufficient and substantial competent evidence appellant failed to remedy the problems which initially caused the removal of the children from their home. Appellant failed to complete her case plan services. We also find that appellant has abandoned B.R. and W. R. as she has had no visit, contact or communication with B.R. since March 7, 2017 and none with W. R. since September 29, 2017. Appellant excuses her failure by blaming the Agency's decision to terminate visitation due to the Mother's behavior and the children's wishes. Appellant was represented by competent counsel and a guardian ad litem was

appointed to protect her interests.  We find no reason to believe that she was not aware of other avenues to maintain contact with the children and the opportunity to reconnect by devoting time and effort to completing the case plan.  She failed to comply with the Agency's requirements and made no attempt to contact B. R. or W.R.  Her failure to take responsibility for the consequences of her own actions is consistent with the court's finding that she will likely never complete the requirement of the case plan.

{¶25} Based upon the foregoing, we find the trial court's finding B.R. and W.R. have been abandoned by appellant, that B.R., W.R. and A.R have been in the continuous temporary custody of the Agency for twelve out of the last twenty-two consecutive months and that the children could not be placed with either parent within a reasonable period of time or should not be placed with the parents was not against the manifest weight of the evidence. We further find the trial court's finding it was in the best interest of the children to grant permanent custody to the Agency was not against the manifest weight of the evidence. The children have mental health and emotional issues. A.R. has only an unhealthy bond with appellant and the benefits of permanency outweigh any harm that might be caused by the severing of the bond.  B.R.  and W. R. have no bond with appellant so the benefits of permanency are in the child's best interests and the child will not be harmed by the severing of a bond.  All of the children have expressed a desire to not have any further contact with appellant and the record contains unrebutted evidence that they have little or no bond with each other.  The children were improving in foster care, all of the children are adoptable and they will benefit from a permanent resolution which cannot be achieved without granting permanent custody.

{¶26} Appellant's first and third assignments of error are overruled.

{¶27} In her second assignment of error, appellant attempts to shift the blame for her failure to visit B.R. and W.R. to the Agency because visitation was terminated by the Agency upon the recommendation of the children's therapists. Appellant contends she cannot be held responsible for failure to visit when visits were prohibited by the Agency. Her attempt to absolve herself only further exposes her focus on herself over her children.

{¶28} The relevant Code section describes abandonment as a failure to visit or maintain contact for more than ninety days.  R.C. 2151.011(C). We find no error in the trial court's determination that B.R. and W.R. were abandoned. Although the appellant was unable to visit them because visitation was suspended, the record contains nothing to suggest she was in any way prevented from maintaining contact with the children by other means, such as telephone calls, letters or cards. It was the mother's voluntary action in failing to interact with the children in any way during visits, along with her failure to begin making any progress on the case plan, which led to the suspension of visitation. Under these facts, the trial court did not err in determining that B.R. and W.R. were abandoned. *In re C.C.,* 12th Dist. Warren No. CA2011-11-113, 2012-Ohio-1291, ¶¶ 18-19.

{¶29} Appellant's contention that she was not made aware of the fact that she had the option of contacting her children through other means is no defense to her failure to make the attempt.  The record contains no evidence that she made any attempt to contact the children from the date that she last saw them in 2017, well over six months prior to the filing of the motion for permanent custody.  We find that appellant bears the responsibility for the lack of contact and that the trial court did not abuse its discretion in finding the children abandoned.

**{¶30}** Appellant's second assignment of error is overruled.

**{¶31}** The decision of the Stark County Court of Common Pleas, Family Court Division is affirmed.

By: Baldwin, J.

and Delaney, J. concur

Hoffman, P.J. concurs in part,
Dissents in part separately.

*Hoffman, J., concurring in part, and dissenting in part*

{¶32} I concur in the majority's analysis and disposition of Appellant's first and third assignments of error with respect to the trial court's determination all three children were in the continuous temporary custody of the Agency for 12 out of the last 22 consecutive months, and further that the three children cannot be placed with either parent within a reasonable time or should be placed with them. I disagree with the majority's conclusion in its discussion of Appellant's first assignment of error the evidence supported Appellant abandoned B.R. and W.R.[1] Accordingly, I dissent from the majority's decision to overrule Appellant's second assignment of error.

{¶33} I begin by noting under the two issue rule, if any one of the three grounds found by the trial court to exist, *i.e.,* R.C. 2151.414(B)(1)(a), (b), or (d), was supported by the evidence, the decision would be affirmed. Appellant did not challenge the trial court's finding under R.C. 2151.414(B)(1)(d) the children were in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two month period. Having failed to do so, Appellant's arguments as to the trial court's findings regarding R.C. 2151.414(B)(1)(a) and (b) are moot.

{¶34} I also note it is internally inconsistent for a trial court to find both R.C. 2151.414(B)(1)(a) and (b) apply with regard to the same child. Subsection (a) applies when the child is not abandoned [or orphaned] while subsection (b) applies when the child is abandoned.[2]

---

[1] The trial court's Findings of Fact and Conclusions of Law with respect to B.R. does not find Appellant abandoned B.R., although such finding is made in the Judgment Entry. The trial court's determination W.R. was abandoned is found in both its Findings of Fact and Conclusion of Law, and Judgment Entry.
[2] If the trial court had indicated these were alternative findings, such internal inconsistency would be eliminated.

**{¶35}** I find the trial court's decision Appellant abandoned B.R. and W.R. is not supported by the evidence. The trial court based its decision on the fact Appellant had failed to visit them for a period in excess of ninety days.[3]

**{¶36}** I find the Agency's decision to terminate Appellant's visits, although justified due to her inability to bond with the children during those visits, and because the visits adversely affected the children, does not constitute abandonment. Appellant did not voluntarily fail to appear at those visits. She appeared until ordered not to. Her failure to visit thereafter was involuntary. During the pendency of the case, Appellant successfully completed the drug and alcohol assessment, and there were no further issues regarding her abuse of drugs and alcohol. Appellant appeared at all appointments and visits, with minor exceptions. She had regular attendance at the Goodwill Parenting Program and Free Space Anger Management. Conceding the fact Appellant demonstrated minimal benefits from the programs, her compliance with the appearance and attendance requirements belies a finding of abandonment when her ability to visit was take away involuntarily. Such circumstances do not justify the family law equivalent of the death penalty in a criminal case. *In re Smith*, 77 Ohio App.3d 1, 16 (1991).

---

[3] The trial court did not base its finding of abandonment on Appellant's failure to maintain contact with the children for more than ninety days.

**{¶37}** I would affirm the trial court's finding R.C. 2151.414(B)(1)(a) and (d) apply, but would reverse its finding R.C. 2151.414(B)(1)(b) applies.  However, because of the two issue rule, I affirm the trial court's decision to terminate Appellant's parental rights with respect to all three children.