[Cite as *In re I.B.*, 2019-Ohio-3450.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF I.B., | : | JUDGES: |
| DEPENDENT CHILD | : | Hon. Patricial A. Delaney, P.J. |
| | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | |
| | : | Case No. 2019 AP03 0011 |
| | : | |
| | : | O P I N I O N |
| | : | |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Juvenile Division, Case No.
17JN00357

JUDGMENT:                    Affirmed

DATE OF JUDGMENT:            August 26, 2019

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

KAREN ROSS QUINLAN                      MICHAEL JOHNSON
389 16th Street SW                      117 South Broadway
New Philadelphia, OH 44663              P.O. Box 1007
                                        New Philadelphia, OH 44663

For I. B.
                                        BRANDLE MCKINNEY-BUTCHER,
DOUGLAS JACKSON                         PRO SE
P.O. Box 188                            2225 North Water Street Ext.
Urichsville, OH 44683                   Apt. 1
                                        Urichsville, OH  44683

Guardian ad Litem

GERRIT M. DENHEIJER
222 W. Main Street

Ravenna, OH 44266
*Wise, Earle, J.*

{¶ 1} Appellant-father (hereinafter "father") appeals the November 28, 2018 Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Court Division, which terminated his parental rights with respect to his minor child, 14-year-old I.B., and granted permanent custody of the child to appellee, Tuscarawas County Job and Family Services (hereinafter "TCJFS").

FACTS AND PROCEDURAL HISTORY

{¶ 2} TCJFS involvement with this family began before mother and father divorced in 2016. In 2004, due to deplorable home conditions as well as medical and physical neglect, all three children were removed and placed in foster care. They were returned to mother and father in 2006. After mother and father's divorce, mother left Tuscarawas County with the children, including I.B, the child at issue here. Their whereabouts were unknown for a year.

{¶ 3} Mother returned to Tuscarawas County in 2017. She went to a shelter and placed the children with S.M., an acquaintance from church. S.M filed for custody, but the placement was ultimately found to be inappropriate.

{¶ 4} On November 3, 2017, TCJFS filed a motion for custody of I.B. On November 28, the case was adjudicated and I.B was found to be a dependent child. A guardian ad litem was appointed for I.B.

{¶ 5} A magistrate's decision was filed on December 12, 2017, ordering I.B into the temporary custody of TCJFS.

{¶ 6}   Father desired custody of I.B but has not had custody of any of the children since the divorce. He was granted supervised visitation during the pendency of this matter, for one hour per week. A case plan was formulated for father which required him to complete parent education classes, a psychological evaluation, sign required releases, obtain and maintain safe, sanitary, and stable housing, stay current on mortgage and utility payments, and maintain employment.

{¶ 7}   On October 1, 2018, TCJFS filed a motion for permanent custody as neither mother nor father could provide a stable, safe, and sanitary home for I.B.

{¶ 8}   A permanent custody trial began on December 12, 2018. Mother stipulated to the permanent custody motion indicating she understood it was within I.B's best interest. Trial went forward on father's motion for custody.

{¶ 9}   Father testified on his own behalf and admitted he has a housing problem. As of the first day of trial, he was living with D.R., his girlfriend of 6 years, and her 3 adult children. Father stated there was no room for I.B in D.R's home. In addition to having no housing, father had no concrete plan as to how to care for I.B. such as enrolling him in a good school and extracurricular activities, transporting I.B. to and from school and activities, and supervision for I.B. while father worked.

{¶ 10} As of the second day of trial, February 5, 2019, father and D.R. had split up and father was living in the marital property where mother had remained following the divorce. The home is in uninhabitable condition. The property is water damaged due to a leaking roof, there are holes in the walls, ceiling, and floors, and animal feces and trash strewn throughout the home. Plumbing, floors and flooring, joists and walls all need replaced. Although the home had been in father's possession since 2016, he did not begin

to attempt to make the home livable again until October or November 2018, a year after TCJFS filed its motion for permanent custody. Father testified that as of the second still day of trial, the home was not suitable for I.B. Although the home now has heat and electric, there is no running water, no bathroom, and no stove. Father cooks on a hot plate. Ongoing TCJFS case worker Brittany Renner toured the home shortly before the permanent custody hearing and described the home as uninhabitable.

{¶ 11} Due to father's distrust of government and educational systems, I.B. never attended public schools. Mother home schooled I.B., but was not qualified to do so, nor was the family financially able to provide the proper resources for home schooling. This put I.B. severely behind academically as well as socially. In his foster home, I.B has been thriving. He is very bright, and had become an A, B student in a challenging school district where much is expected of him. He is also on the wrestling team. I.B still struggles, however with social interactions.

{¶ 12} Father dropped out of school in the 10th grade. His reading and math skills are at a first and second grade level respectively. Father did attend welding school and has held steady work as a welder, wher he is well respected by his peers. I.B. idolizes his father and desires to be a welder like his father. However, he also mimics father's other behaviors such as refusing to brush his teeth, shower, or change his clothes.

{¶ 13} Renner testified that father completed all of the goals of his case plan except for sharing his employment information and obtaining housing. Renner's concerns besides housing were if custody were granted to father, I.B. would stop attending school and continue to withdraw socially. Father told Renner he would "try" to keep I.B. in school.

{¶ 14} These concerns were echoed by Dr. Anita Exley who completed a psychological evaluation of father for the purpose of determining father's ability to take custody of I.B. Father arrived at the appointment smelling badly and wearing filthy clothing, only some of which could be attributed to his employment. Dr. Exley diagnosed father with unspecified personality disorder. He exhibited features of many personality styles, but nothing clear-cut. Father's specific issues – paranoid, fragmented, rigid thinking, and erratic moods would make being a parent difficult even if father had support. Father additionally has difficulty with empathy and lacks good parental judgment skills. Because father has had limited contact with I.B in recent years Dr. Exley also had concerns about father's ability to connect emotionally with I.B.

{¶ 15} Further, due to father's own educational deficits and distrust of government organizations and public schools, Dr. Exley had concerns about father's ability to support I.B.'s education. Dr. Exley concluded that due to father's lifestyle, lack of consistency, and lack of safe, stable housing, moving from one hour per week visitation to full time custody would be risky.

{¶ 16} Father obtained a second opinion from Dr. Gregory Emanuelson. Emanuelson received Dr. Exley's evaluation and did not repeat her testing. He did not request any information from TCJFS and was unaware that there had been prior substantiated neglect of the children. At the time of his evaluation, Emanuelson had no concerns about extending father's visitation with I.B. But given the new information revealed to him during the hearing, he testified he would need further information before making any recommendation regarding custody.

{¶ 17} On February 27, the trial court issued its judgment entry granting TCJFS permanent custody of I.B. Father now appeals that decision, raising two assignments of error:

I

{¶ 18} "THE COURT ABUSED ITS DISCRETION IN AWARDING PERMANENT CUSTODY TO JOB AND FAMILY SERVICES AS JOB AND FAMILY SERVICES FAILED TO PROVIDE BY CLEAR AND CONVINCING EVIDENCE THAT THE CHILD COULD NOT BE PLACED WITH HIS FATHER IN A REASONABLE AMOUNT OF TIME, AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST."

II

{¶ 19} "THE TRIAL COURT ABUSED ITS DISCRETION IN CONCLUDING THAT I.B. WOULD TAKE ADVANTAGE OF HIS FATHER'S DEFICITS, INVOLVE HIMSELF IN CRIMINAL BEHAVIOR, AND FAIL TO COMPLETE AN EDUCATION AS THE RECORD FAILS TO PROVE BY CLEAR AND CONVINCING EVIDENCE THESE CONCLUSIONS AND AWARD OF PERMANENT CUSTODY WAS NOT IN THE BEST INTEREST OF THE CHILD."

I

{¶ 20} In his first assignment of error, appellant argues the trial court abused its discretion in awarding permanent custody of I.B to TCJFS because TCJFS failed to prove by clear and convincing evidence that I.B. could not be placed with father in a reasonable amount of time or that the award of permanent custody was in I.B's best interest. We disagree.

{¶ 21} We set forth a trial court's process for analyzing a permanent custody motion in *In the Matters of: A.R., B.R., W.R.*, 5th Dist. Stark Nos 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389, paraphrased as follows:

{¶ 22} When deciding a motion for permanent custody, a trial court must follow the guidelines provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

{¶ 23} Following a hearing on the motion, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶ 24} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a

reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 25} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶ 26} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶ 27} If the child is not abandoned or orphaned, as is the case here, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to the child's parent or parents.

{¶ 28} Relevant here, R.C. 2151.414(E)(1) states:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶ 29} Here, housing was the most pressing issue. Father argues he should be given a 6-month extension of time to complete work on the house. But father regained possession of the home in 2016. Then, following the opening of the instant case, father had a full year to obtain safe, sanitary, stable housing for himself and I.B. He failed to make any move to make the marital home inhabitable until a year after TCJFS filed its motion for permanent custody.

{¶ 30} Further, father is working on restoring the home by himself or with occasional help from a friend, and as funds become available. Father testified he works full time and makes $30,000 a year. These facts, given father's history and the

exceedingly poor condition of the home, do not bode well for father's ability to make the home appropriate for I.B. at any point in the foreseeable future let alone 6 in months. Thus we find the trial court's finding that I.B. could not be placed with father in reasonable time despite the efforts of TCJFS is supported by clear and convincing evidence.

{¶ 31} Moreover, granting permanent custody to TCJFS was in I.B.'s best interest. The fact that father worked his case plan and that I.B. and his father have a bond was not lost on the trial court, nor is it lost on this court. However, father displayed little ability to provide for I.B.'s basic daily needs, education, socialization, and supervision. Continuing I.B.'s education is important and father has a record of resistance in this area. Indeed, it was father who made the decision for mother to home school I.B. when mother was in no way qualified to do so. Additionally, this was not the first time inadequate housing was an issue for this family. In a year's time, father could have easily found suitable housing for himself and I.B., but instead chose to live with his girlfriend where I.B. could not live. This is evidence of Dr. Exley's observation that father has poor parental decision making skills.

{¶ 32} The record supports the trial court's grant of permanent custody to TCJFS. The first assignment of error is overruled.

II

{¶ 33} In his second assignment of error, father takes issue with language used by the trial court in its judgment entry, specifically "* * * [T]he Court finds it likely that Izaiah would eventually take advantage of his father's deficits, involve himself in criminal behavior, and fail to complete an education."

{¶ 34} Father argues this statement is contrary to the evidence before the court. Insofar as I.B. engaging in criminal behavior, we agree there was no evidence presented

at trial indicating I.B. being prone to such behavior or that father would encourage the same. Nonetheless, we find this error harmless given our analysis and conclusions set forth in the first assignment of error.

{¶ 35} Additionally in his second assignment of error, father reiterates arguments raised in his first assignment of error. As we concluded above, the record supports the trial court's conclusion that I.B. cannot be placed with his father in a reasonable amount of time, and that a grant of permanent custody to TCJFS is in I.B.'s best interest.

{¶ 36} The second assignment of error is overruled.

{¶ 37} The judgment of the Tuscarawas County Court of Common Pleas Juvenile Division is affirmed.

By Wise, Earle, J.

Delaney, P.J. and

Baldwin, J. concur.

EEW/rw