[Cite as *In re C.B.*, 2020-Ohio-879.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| C.B., | : | |
| A Dependent Child | : | Hon. John W. Wise, P.J. |
| | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| | : | |
| | : | Case No. 19-COA-030 |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Ashland County Court
of Common Pleas, Juvenile Division,
case no. 20173035


JUDGMENT:                    AFFIRMED



DATE OF JUDGMENT ENTRY:      March 5, 2020



APPEARANCES:

For Appellee State of Ohio, Ashland          For Appellant Father:
Co. Dept. of Job and Family Services:
CHRISTOPHER R. TUNNELL                        JOSEPH P. KEARNS, JR.
ASHLAND CO. PROSECUTOR                        MASON, MASON & KEARNS
JOSHUA T. ASPIN                               153 West Main St.
110 Cottage St., 3rd Floor                    Ashland, OH 44805
Ashland, OH 44805

*Delaney, J.*

{¶1} Appellant T.B., the Father of C.B., a minor, appeals from the July 30, 2019 Opinion and Judgment Entry of the Ashland County Court of Common Pleas, Juvenile Division granting permanent custody of C.B. to appellee Ashland County Department of Job and Family Services ("Agency").

## FACTS AND PROCEDURAL HISTORY

{¶2} This case arose with the filing of a complaint on May 10, 2017, alleging C.B. was a dependent/neglected child. C.B. was approximately four months old at the time of filing. The child was removed from the home of Mother and Father.[1] A case plan was filed on June 8, 2017, and adopted as the order of the trial court.

{¶3} The trial court conducted an adjudicatory hearing on August 3, 2017 and filed a judgment entry on August 11, 2017. The original complaint was amended and C.B. was found to be a dependent child pursuant to R.C. 2151.04(C).

{¶4} A dispositional hearing was held on August 19, 2017. Via judgment entry filed August 22, 2017, C.B. was placed in the temporary custody of the Agency.

{¶5} We note that when the case commenced, Mother was married to C.C. ("Spouse") and C.B. was born during the marriage. The presumption therefore arose that Spouse was the father of C.B., but all parties stated this was not the case. The Agency requested, and the trial court ordered, D.N.A. paternity testing. Father and Mother, however, did not comply with the order until October 2018. Eventually Father was determined to be the biological father of C.B., and the trial court established the father-child relationship in its Opinion and Judgment Entry of July 30, 2019.

---

[1] Mother L.C. is not a party to the instant appeal.

{¶6} On July 2, 2018, the Agency filed a motion for annual review. A magistrate conducted a hearing and issued written findings on July 24, 2018.

{¶7} The Agency filed a motion for permanent custody on August 3, 2018, which proceeded to evidentiary hearing before the trial court on March 26, 2019. At that hearing, the following evidence was adduced.

{¶8} On May 9, 2017, representatives of the Agency and law enforcement went to the home of Mother and Father in response to a child welfare referral. The children were found in unsafe and unsanitary living conditions; specifically, there was no running water and no electricity. An extension cord ran from the home to a separate residence. A bucket of water was used to "flush" the toilet. Four children in addition to C.B. were present in the home; those four children are the children of either Mother, Father, or both. Mother and Father admitted to recent use of heroin and marijuana.

{¶9} C.B. was four months old at the time and was observed to have a significant flat spot on the back of his head. This flat spot was caused by the parents' neglectful placement of the child: C.B. was kept in a car seat. He slept in the car seat which was placed inside a playpen in an area cleared of clutter.

{¶10} Mother and Father have lengthy, substantial records of drug abuse. In 2013, Father was convicted of two counts of trafficking in heroin, both felonies of the fifth degree, and served a prison term of 24 months.

{¶11} Mother and Father signed a case plan prepared by the Agency, which was adopted as the order of the trial court. The case plan required both parents to complete drug and alcohol assessments, plus all recommended follow-up; complete a parent education program; and comply with case management services, including obtain and

maintain a stable home, cooperate with the Agency, remain drug-free, and submit to random drug screens as requested.

{¶12} The case plan was signed and filed on June 6, 2017. As of July 2018, neither parent complied with the case plan, engaged in any case plan services, nor had completed any portion of the case plan.

{¶13} Through the autumn of 2018, there was little contact between parents and the Agency. Mother and Father were homeless, moved frequently, and their whereabouts were often unknown. In July 2018, the family's caseworker attempted to make contact by calling every number the Agency had for the parents, and physically went to every location the parents were known to frequent. Mother and Father were not located at that time.

{¶14} The Agency was unable to make contact with either Mother or Father until each was incarcerated, separately and on unrelated matters, in the Ashland County Jail. The caseworker made contact with Mother on September 26, 2018; Mother acknowledged she had been homeless for a year and made no progress on the case plan, although she was willing to start services when she got out of jail. Mother was released from jail on November 29, 2018. Father was also located at the Ashland County Jail in September 2018. He, too, reported that he was homeless for the preceding year and had made no progress on the case plan.

{¶15} Mother did not contact the caseworker upon her release from jail. The caseworker made efforts to locate Mother without success, and there was no contact until January 2019.

{¶16} Father was released from jail in late September or early October 2018. While incarcerated, Father decided to change his lifestyle by participating in rehabilitation services and stopping his drug abuse. Upon release from jail, Father voluntarily entered treatment at the New Destiny Center in Clinton, Ohio, a nine-month program.

{¶17} While in the treatment center, Father was successful, participating in services and making progress. He was drug-tested with negative results. However, Father only attended three months of the nine-month program, and then left, stating he wanted to reunify with his child. He wanted to find employment, pay on his child-support obligations, and work on his case plan. The evidence established Father was not advised to do this by the caseworker, nor was Father told that completion of the nine-month program would have negative consequences for reunification with his child.

{¶18} Father moved into an apartment in Mansfield with a paramour. He requested visitation with his child and visits were arranged.

{¶19} In the meantime, Mother was released from jail and also requested visitation with the child, and visits were arranged. Mother attends supervised visitation at the Agency and has missed only one visit. No concerns have been noted.

{¶20} Visitation between Father and the child commenced in December 2018. Prior to this, Father last visited with the child in July 2017. Father went almost a year and a half with no contact with the child due to his own acts and omissions.

{¶21} Father submitted to drug tests requested by the Agency. On May 9 and May 10, 2017, Father tested positive for marijuana, cocaine, and opiates including heroin. Drug tests on October 12, 2018, December 6, 2018, December 27, 2018, January 17, 2019, February 15, 2019, and March 19, 2019 were negative.

{¶22} Father commenced supervised visitation with the child at the Agency with the foster mother present initially. No concerns were noted with visitation; Father did not miss any visits and visitation has progressed to off-premises.

{¶23} Father works through a temporary agency. At the time of the evidentiary hearing, he anticipated being hired by his temporary placement employer, although he had worked there only a short time.

{¶24} Neither parent has paid support for the child, although within the 30 days prior to the evidentiary hearing, Father commenced some child support payments.

{¶25} Father has not completed any part of the case plan, but is now working on case plan requirements. When he left the New Destiny Treatment Center, he signed up for services in Mansfield with Catalyst and is participating in drug and mental health services at that facility. He can participate in a parent-education program there, but had not started the program as of the date of the evidentiary hearing.

{¶26} C.B. was four months old when he was removed from the care of Mother and Father, and was two years old at the time of the evidentiary hearing. He was placed in a foster home and has remained in the same foster placement; his needs are being met and his biological cousin resides in the same foster home. C.B. is bonded with his foster mother and they have a mother-child relationship; the foster mother provides for his needs, medical and otherwise. The foster mother has not undermined C.B.'s relationship with Father and Mother, and has voluntarily participated in visitation for C.B.'s benefit. The foster family lives in a single-family residence. Foster mother works during the day but has made appropriate arrangements for child care while she is working. The

foster home is described as stable, loving, and comfortable for the child. C.B. is fully integrated into the foster home and considers himself part of the family.

{¶27} C.B. does refer to Father as his father and foster mother has no concerns about C.B.'s interactions with Father. She is not opposed to future contact between Father and C.B. regardless of the outcome of the permanent custody proceedings.

{¶28} Father acknowledges he is a long-term drug addict who was homeless for over a year during the duration of this case, in part while he evaded an arrest warrant. He acknowledges he did not work the case plan during that time, but is now attempting to change his lifestyle and work on the case plan.

{¶29} The caseworker opined the child cannot be safely returned to either parent at the present time and that a grant of permanent custody to the Agency would serve the best interest of the child.

{¶30} The guardian ad litem (G.A.L.) filed a written report with the trial court and made recommendations to the court. The G.A.L. noted Father left the New Destiny Treatment Center against medical advice, without completing any portion of the program, which troubles the G.A.L. in light of Father's lengthy history of drug abuse and relatively short period of sobriety. The G.A.L. noted both parents failed to maintain contact with C.B. for most of the first two years of his life, during which time they had the opportunity to work the case plan and to have contact with their child, but failed to do so. Although Father is making recent attempts to work the case plan, C.B. has spent most of his life in the care of the foster family, an environment which has been consistently safe and stable. The G.A.L. concluded the child cannot be reunified with either parent at the present time and it would be in the best interest of the child to grant permanent custody to the Agency.

{¶31} The trial court found C.B. has been in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period.

{¶32} By an Opinion and Judgment Entry filed July 30, 2019, the trial court granted the motion of the Agency for permanent custody. Father now appeals from that Opinion and Judgment Entry.

{¶33} Father raises one assignment of error:

## ASSIGNMENT OF ERROR

{¶34} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED PERMANENT CUSTODY OF THE CHILD TO THE ASHLAND COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES."

## ANALYSIS

{¶35} Father argues the trial court's decision granting permanent custody of C.B. to the Agency is an abuse of discretion. We disagree.

{¶36} A trial court's decision to grant permanent custody of a child must be supported by clear and convincing evidence. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty, as required beyond a reasonable doubt, as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954); *In re: Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985). In reviewing whether the trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy

the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54, 60 (1990); *See also*, *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). If the trial court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. *Schiebel*, 55 Ohio St.3d at 74, 564 N.E.2d 54.

{¶37} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." *Id.* Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984): The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. Moreover, deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997); *see, also*, *In re: Christian*, 4th Dist. Athens App. No. 04CA10, 2004-Ohio-3146; In re: C. W., 2nd Dist. Montgomery App. No. 20140, 2004-Ohio-2040.

{¶38} We set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.*, 5th Dist. Stark Nos 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389, paraphrased as follows:

When deciding a motion for permanent custody, a trial court must follow the guidelines * * * provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

Following a hearing on the motion, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶39} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) requires the trial court to consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of

the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

{¶40} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

*R.C. 2151.414(B)(1)(d)*

{¶41} The trial court concluded that R.C. 2151.414(B)(1)(d) applied to C.B, to wit, the child was in the temporary custody of the Agency for twelve or more months of a consecutive twenty-two-month period. C.B. was placed in the temporary custody of the Agency on August 22, 2017, nineteen months before the hearing took place. We find the trial court's judgment on this point is supported by competent, credible evidence. *Schiebel*, 55 Ohio St.3d at 74, 564 N.E.2d 54.

*Best interest of the child*

{¶42} Father does not challenge the trial court's finding pursuant to R.C. 2151.414(B)(1)(d) but argues the trial court's findings regarding the best interest of C.B. are not supported by clear and convincing evidence.

{¶43} We turn our focus to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶44} Relevant here, R.C. 2151.414(E)(10) states:

> In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
>
> * * * *.
>
> The parent has abandoned the child.

{¶45} A child is presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.  R.C.

2151.011(C). The trial court in the instant case found that Father and Mother abandoned C.B.

{¶46} We find appellee presented sufficient competent, credible evidence to demonstrate that C.B. cannot or should not be placed with Father within a reasonable period of time. Father argues that the trial court could have chosen an alternative to permanent custody because he is attempting to change his lifestyle for the benefit of his child and is working on his sobriety. As appellee points out, however, Father only began these efforts after the motion for permanent custody was filed. Neither parent visited or made contact with C.B. for 18 months while they struggled with substance abuse and homelessness. During that period Father made no effort to work his case plan. We share the concern of the trial court and the G.A.L. that Father terminated his enrollment in the inpatient drug rehabilitation program, even though his motivation was to reunite with C.B.

{¶47} Meanwhile, C.B.'s needs are being well-met by his foster mother. C.B. deserves permanency and Father is not presently in a position to provide for his needs. It is not fair for C.B. to continue in limbo while Father works out his substance abuse issues. We agree with the trial court that Father's efforts are commendable, but the recent efforts are not sufficient to establish that Father can provide a secure, permanent placement for C.B. at the present time.

{¶48} Based on the foregoing, the trial court's findings that C.B. could not be placed with either parent in a reasonable amount of time, and should not be placed with either parent, are not against the manifest weight of the evidence and are supported by sufficient evidence. We further find the trial court's finding that the best interest of the child

is served by a grant of permanent custody to the Agency is not against the manifest weight of the evidence and is supported by sufficient evidence.

{¶49} Father's sole assignment of error is overruled.

## CONCLUSION

{¶50} Father's sole assignment of error is overruled and the judgment of the Ashland County Court of Common Pleas, Juvenile Division is affirmed.

By: Delaney, J.,

Wise, John, P.J. and

Wise, Earle, J., concur.