[Cite as *In re R.S.*, 2020-Ohio-4560.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

R.S.

ALLEGED DEPENDENT CHILD

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. John W. Wise, J.
Hon. Earle E. Wise, Jr., J.

Case No. 19 CA 00019

O P I N I O N

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas,
                              Juvenile Division, Case No.  2017 C 277

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       September 22, 2020

APPEARANCES:

For Appellant Father

MICHAEL J. CONNICK
MICHAEL J. CONNICK CO., LPA
301 Main Street, Suite H
Zanesville, Ohio  43701

For Appellee

JESSICA L. MONGOLD
PERRY COUNTY CHILDREN SERVICES
P. O. Box 502
Lancaster, Ohio  43130

*Wise, John, J.*

**{¶1}** Appellant, Michael S., appeals the decision of the Perry County Court of Common Pleas, Juvenile Division, which terminated Jennifer D.'s and Michael S.'s parental rights and granted Perry County Children's Services Agency ("Agency") motion for permanent custody of their child, R.S. The following facts give rise to this appeal.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** R.S. was born on January 25, 2016. Appellant is the natural father of R.S. established via the execution of an Acknowledgment of Paternity Affidavit which has become final. Jennifer D. is the biological mother of R.S.

**{¶3}** On August 3, 2017, Jennifer D. had contact with law enforcement leading to charges of endangering children, possession of a schedule three drug, and drug paraphernalia.

**{¶4}** On August 4, 2017, Appellant and Jennifer D. voluntarily signed a Temporary Care Agreement granting the Agency temporary care of R.S.

**{¶5}** Jennifer D. was eventually found guilty of all charges and ordered to participate in Perry County Drug Court as part of her sentence in September of 2017.

**{¶6}** On September 12, 2017, the Agency filed a complaint with Perry County Juvenile Court seeking temporary custody of R.S. alleging he was a dependent child under R.C. 2151.04(C).

**{¶7}** On October 18, 2017, an adjudication hearing was scheduled, in which Jennifer D. did not attend. Appellant did appear on this date and admitted R.S. was a dependent minor. The trial court did not appoint an attorney to represent Jennifer D. at that time, nor was an attorney or guardian ad litem appointed to represent R.S. The trial

court rescheduled the hearing to give Jennifer D. the opportunity to participate in the proceedings.

{¶8} On November 8, 2017, both Appellant and Jennifer D. signed the case plan.

{¶9} On November 29, 2017, the adjudication hearing was held. Appellant was present. Jennifer D. appeared without the benefit of counsel. The trial court held Jennifer D. was properly served and affirmed its previous finding adjudicating R.S. as a dependent child. The court continued its order granting the Agency temporary custody and continuing R.S.'s placement with his paternal grandmother.

{¶10} On September 26, 2018, an Annual Review of the case plan was held; both parents failed to appear.

{¶11} On June 7, 2019, a Motion for Permanent Custody was filed on June 7, 2019, and the Permanent Custody Hearing Notice was issued on June 11, 2019.

{¶12} On June 12, 2019, a guardian ad litem for R.S., an attorney for Appellant, and an attorney for Jennifer D. were appointed.

{¶13} On July 24, 2019, the guardian ad litem filed a written report with the trial court.

{¶14} On August 7, 2019, a trial on the Agency's Motion for Permanent Custody and placing R.S. into the permanent custody of the Agency was held. Jennifer D. was incarcerated at this time. The new charges stemming from Jennifer D.'s arrest in July of 2019 were still pending.

{¶15} Jennifer D. testified that around 2012, she lost permanent custody of two of her children, half-siblings to R.S., due to her drug use. She further testified that on August 3, 2017, she had contact with law enforcement due to her use of drugs, charges of

endangering children, possession of a schedule three drug, and drug paraphernalia. This led to Jennifer D.'s continued participation in drug court since September of 2017, and began the Agency's involvement with R.S.

{¶16}  Jennifer D. testified that in February of 2018 a warrant was issued for her arrest due to her noncompliance with the drug court program. After her arrest, Jennifer D. was ordered to complete an inpatient drug counseling program at Stanton Villa. After completing the inpatient drug program in April of 2018, Jennifer D. relapsed a few days later.

{¶17}  Following Jennifer D.'s relapse on methamphetamine, she testified that she was ordered to enter another inpatient treatment program. Jennifer D. then entered Stepping Stones in August of 2018. She did not successfully complete the Stepping Stones program. Jennifer D. tested positive for Suboxone while in inpatient treatment.

{¶18}  After leaving Stepping Stones, Jennifer D. testified she entered detox for several days. She did not complete the detox program. Another warrant for her arrest was issued by the court. She was arrested on or about October 29, 2018. She remained incarcerated until February 12, 2019. On February 12, 2019, Jennifer D. was ordered to enter inpatient treatment at the Salvation Army.

{¶19}  Jennifer D. testified she failed to complete inpatient treatment at Salvation Army and left in March of 2019. Another warrant was issued for her arrest. She was arrested on this warrant in July of 2019. At the time of arrest, she was charged with additional crimes including: resisting arrest, falsification, possession of a hypodermic needle (two counts), and possession of digital scales. At the time of the hearing her court date was set for August 22, 2019.

{¶20} Jennifer D. further testified she had been diagnosed with manic depression, ADHD, borderline personality disorder, and PTSD. She initially received counselling and medications, but she has not been regularly attending counselling since September of 2018.

{¶21} Jennifer D. testified she signed a case plan consisting of domestic violence counseling for Appellant and Jennifer D. due to a history of domestic violence between them, drug abuse treatment recommendations for Jennifer D., and coordination with Integrated Services for housing and case management for her. She was able to obtain housing but then abandoned it when she realized she could go to jail in September of 2018. Jennifer D. would not communicate with the Agency during the period of time she had warrants for her arrest.

{¶22} Appellant also testified at the trial. He testified he spent two months in jail for driving under suspension. He testified he did not participate in domestic violence counseling with Jennifer D. He testified he was compliant with the random drug screens until his car broke down. He said he has not participated in any drug screens since October 29, 2018. He testified he did not work in Integrated Services and was removed from the case plan. At the time of the hearing he testified he had not seen R.S. since November 19, 2018. He also testified he smoked marijuana at the time R.S. was removed from his custody and continues to smoke marijuana.

{¶23} At the hearing Lacy Bateson, an employee of Perry County Children Services, testified neither Appellant nor Jennifer D. made any attempt to comply with domestic violence counseling, and that Jennifer D. did not successfully complete drug abuse treatment recommendations. Ms. Bateson further testified that she could only

make contact with Jennifer D. during periods of her incarceration, and Jennifer D. only worked with Integrated Services for four to five months. Ms. Bateson also testified Jennifer D. did not visit with R.S. starting before February of 2018 through August 7, 2019. Ms. Bateson testified Appellant failed to complete any domestic violence counseling, he did not successfully complete his drug testing, and he was required to work with Integrated Services but failed to do so. She further testified that Appellant did not visit with R.S. from November 19, 2018 through August 7, 2019, despite being offered the opportunity to do so.

{¶24} Mandy Tripp, an information specialist and keeper of the records at American Court Services, testified that since August 3, 2017, Appellant and Jennifer D. both tested positive for drugs during their screenings.

{¶25}  The guardian ad litem, Audrey Stoffel, testified R.S., at three years of age, has bonded with the foster family, and she could not ascertain what he remembered or his desires on where he would like to live. Ms. Stoffel testified she did not attempt to contact Jennifer D., as she had been informed Jennifer D. was "on the run." Ms. Stoffel testified that she believes with the information she had on hand and the testimony she heard during the trial she still believes it is in R.S.'s best interest to grant the Agency's Motion for Permanent Custody.

{¶26} On October 15, 2019, the trial court issued a Final Order Granting the Motion for Permanent Custody and placing R.S. into Permanent Custody of Perry County Children Services.

{¶27} Thereafter, Appellant timely filed his notice of appeal. He raises the following two Assignment of Error.

**ASSIGNMENTS OF ERROR**

**{¶28}** "I. THE TRIAL COURT ERRED BY GRANTING PERMANENT CUSTODY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WITHOUT APPLYING THE CLEARE [sic] AND CONVINCING EVIDENCE STANDARD.

**{¶29}** II. THE TRIAL COURT ERRED BY FAILING TO TIMELY APPOINT A GUARDIAN AD LITEM UNTIL THE PERMANENT CUSTODY STAGE OF THE CASE AND THEN FURTHER ERRED BY RELYING ON THE GUARDIAN AD LITEM'S RECOMMENDATION WHEN THE GUARDIAN AD LITEM'S WRITTEN REPORT WAS NOT ADMITTED INTO EVIDENCE."

**I.**

**{¶30}** In his first Assignment of Error, Appellant submits the trial court erred in granting permanent custody of R.S. against the manifest weight of the evidence and failed to meet their burden of proof by clear and convincing evidence. We disagree.

**{¶31}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. We must determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). When reviewing for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered." *Matter of A.D.*, 5th Dist. Guernsey No. 19 CA 20, 2019-Ohio-3671, ¶9.

**{¶32}** In *Matter of A.D.*, visitations with the children were not regularly attended, there was little interaction between parents and children, the parents were to undergo drug treatment, but did not finish. *Matter of A.D.*, 5th Dist. Guernsey No. 19 CA 20, 2019-Ohio-3671, ¶17-23. Throughout the temporary custody of the children, the parents tested positive for controlled substances. *Id.* A mental health exam was required of the father, which was completed. *Id.* However, he did not return for services and failed to successfully complete the mental health services. *Id.* Finally, the father was to obtain and maintain enough economic resources to support the children. *Id.* He did not obtain stable employment, taking mostly side jobs and relying on food stamps and disability. *Id.* This was determined not enough economic resources to support the children. *Id.*

**{¶33}** These factors led this Court to find, "Sufficient clear and convincing evidence to support the trial court's decision to grant Appellee permanent custody of the children and [does] not find any manifest miscarriage of justice." *Id.* at ¶32.

**{¶34}** This Court set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.,* 5th Dist. Stark Nos. 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389. When deciding a motion for permanent custody a trial court must follow guidelines provided in R.C. 2151.414. R.C. 2151.414(A)(1) requires the trial court to schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing

agency with temporary custody of the child or has placed the child in long-term foster care.

{¶35} R.C.2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and no relatives of the child are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children's services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

{¶36} Clear and convincing evidence "will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. *Id*.

{¶37} The best interest of the child is determined at a permanent custody hearing under R.C. 2151.414(D). Under R.C. 2151.414(D) a trial court must consider all relevant factors, including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as

expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that placement can be achieved without a grant of permanent custody.

{¶38} Therefore, R.C. 2151.414(B) provides a two-pronged analysis the trial court is required to apply when ruling on a motion for permanent custody. In practice, the trial court will determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶39} In the case sub judice, the children are not abandoned or orphaned so the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exists with respect to each of the child's parents.

{¶40} R.C. 2151.414(E)(1) states:

Following the placement of the child outside the child's home notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially cause the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have

substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

**{¶41}** As evidenced by our facts above, we find the State presented sufficient competent, credible evidence to demonstrate R.S. cannot or should not be placed with Appellant or Jennifer D. as they have failed to remedy the problems that initially caused the removal of R.S.

**{¶42}** Appellant had not visited R.S. from November 19, 2018 through August 7, 2019. Jennifer D. has not seen R.S. from before February of 2018 through August 7, 2019. Appellant did not complete the agreed upon case plan. He made no attempt to participate in domestic violence counseling. Appellant did not successfully complete his drug testing, testing positive for drug use during multiple tests, admitting he smokes marijuana, and he did not work with Integrated Services. Jennifer D. did not complete her drug treatment program, routinely tested positive for controlled substances, she was incarcerated at the time of the trial, and only worked with Integrated Services for four or five months before abandoning her housing.

**{¶43}** Based on the forgoing, the trial court found that Appellant and Jennifer D. failed to remedy the conditions that existed at the time of R.S.'s removal, drug use. We further find the trial court's finding that R.S.'s best interests were served by a grant of permanent custody to the Agency is not against the manifest weight of the evidence and is supported by competent and credible evidence.

**{¶44}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶45}** In his second Assignment of Error, Appellant submits the trial court erred in granting permanent custody of R.S. to the Agency by failing to appoint a guardian ad litem for R.S. until the permanent custody stage of the proceedings, and not requiring a guardian ad litem to admit a written report into evidence. We disagree.

**{¶46}** Juvenile Rule 4(B) and R.C. 2151.281 govern the right for the appointment of a guardian ad litem to protect the interest of the child in a juvenile court proceeding.

**{¶47}** Juv.R. 4(B) in pertinent part provides:

(B) Guardian ad litem; when appointed. The court shall appoint a guardian *ad litem* to protect the interests of a child or incompetent adult in a juvenile court proceeding when:

…

(2) The interests of the child and the interests of the parents may conflict.

…

(4) The court believes that the parent of the child is not capable of representing the best interest of the child.

(5) Any proceeding involves allegations of abuse, neglect, voluntary surrender of permanent custody, or termination of parental rights as soon as possible after the commencement of such proceeding.

**{¶48}** R.C. 2151.281 states:

(B)(2) Except in any proceeding concerning a dependent child involving the permanent custody of an infant under the age of six months for the sole purpose of placement for adoption by a private child placing agency, the courts shall appoint a guardian ad litem, subject to rules adopted by the supreme court, to protect the interest of a child in any proceeding concerning an alleged dependent child if any of the following applies:

(a) The parent of the child appears to be mentally incompetent or is under eighteen years of age.

(b) There is a conflict of interest between the child and the child's parents, guardian, or custodian.

(c) The court believes that the parent of the child is not capable of representing the best interest of the child.

**{¶49}** Appellant argues a guardian ad litem should have been appointed "at every critical stage of the proceedings." *In Matter of Myer*, 5th Dist. Delaware No.80-CA-10, 1981 WL 6316. The holding in *Myer* states, "We find the failure of the court to appoint a guardian ad litem for the purpose of protecting the interests of the child at every critical stage of the proceedings in a neglect case is reversible error." *Id*. Appellant contends that even though *Myer* refers to a neglect case and this is a dependency case, it is a distinction without a difference. We disagree. Juv.R. 4(B) makes specific reference to cases of neglect requiring a guardian ad litem. Juv.R. 4(B)(5). Juv.R. 4(B) does not specifically list dependency cases. Therefore, a guardian ad litem is only required to be appointed if another criteria of R.C. 2151.281 or Juv.R. 4(B) is met.

**{¶50}** Appellant also makes reference that the interests of Appellant and the interests of R.S. may have been in conflict before the permanent custody hearing. As Juv.R. 4 requires the trial court to appoint a guardian ad litem when a possibility of a conflict of interest exists, the statute requires an appointment of a guardian ad litem only if the court finds there is an actual conflict of interest. *In re J.C.*, 5th Dist. Knox No. 14CA23, 2015-Ohio-4664, ¶27. Therefore, the relevant question is if the record contains an actual or potential conflict of interest. *Matter of J.D.*, 5th Dist. Richland No. 17CA42, 2018-Ohio-1823, ¶13.

**{¶51}** In *In Matter of J.D.*, there were no facts on the record showing a conflict of interest. The appellant in *In Matter of J.D.* asked the court to presume a potential conflict. As there were no facts on the record, this Court held that no conflict of interest requiring the appointment of a guardian ad litem existed.

**{¶52}** In this case, Appellant argues the trial court finding the child's best interest to be removed from his parents represented a conflict of interest between R.S. and the his parents; however, at the beginning of R.S.'s temporary custody, both Jennifer D. and Appellant voluntarily signed a Temporary Care Agreement giving the Agency temporary care of R.S. In the years that followed, Jennifer D. was in and out of drug abuse treatment, continued to use controlled substances, and was incarcerated. Jennifer D. had not visited R.S. from before February of 2018 through August 7, 2019. Appellant also missed drug tests, failed drug tests, failed to participate in domestic violence counselling, and did not visit with R.S. from November 19, 2018 through August 7, 2019. As there is no specific conflicts of interest noted by Appellant or in the record, a guardian ad litem was not required to be appointed.

**{¶53}** Appellant further argues the trial court failed to admit into evidence a written report of the guardian ad litem, and this constitutes reversible error. In his argument Appellant argues Ohio Sup. R. 48(F) should require a guardian ad litem's report to be admitted into evidence in order to be considered by the trial court.

**{¶54}** As stated by this court in *In the Matter of: H.W.*, 5th Dist. Tuscarawas No. 2016AP 10 0050, 2017-Ohio-7391, ¶15:

Sup.R. 48 sets forth appointment procedures, report requirements, and roles and responsibilities for GALs. As noted by Mother, the Rules of Superintendence do not carry the force of statutory or case law, and create no substantive rights. *Allen v. Allen*, 11th Dist. Trumbull No. 2009-T-0070, 2010-Ohio-475 ¶31. Because Sup.R. 48 is a general guideline that does not have the force of statutory law, Mother does not have any substantive right to enforce it. *Rice v. Rice*, 5th Dist. No. 10 CA F 110091, 2011-Ohio-3099, ¶40.

**{¶55}** The guardian ad litem did submit a report to the trial court, was present during the hearing and after being sworn in, gave her recommendation of permanent custody to Appellee. Appellant's counsel cross-examined the guardian and elicited testimony that she had had no contact with Appellant, she had not observed Appellant with the child, and she had not spoken with R.S.'s mother. We find the trial court did not err by failing to admit the guardian ad litem's report as an exhibit.

{¶56} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division of Perry County, Ohio, is hereby affirmed.


By: Wise, John, J.

Hoffman, P. J., and

Wise, Earle, J., concur.


JWW/br 0915