[Cite as *In re E.H.*, 2022-Ohio-3124.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

E.H.

JUDGES:
Hon. Earle E. Wise, Jr., P.J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. 2022CA00017

O P I N I O N

CHARACTER OF PROCEEDING:     Appeal from the Court of Common PLeas,
Juvenile Division, Case No. F2019-0134

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     September 7, 2022

APPEARANCES:

For Mother J.H.

JERMAINE COLQUITT
33 West Main Street, Suite 109
Newark, Ohio 43055

Guardian ad Litem

CEDRIC P. COLLINS
P. O. Box 564
Pickerington, Ohio 43147

For E.H.

J. MICHAEL NICKS
96 West William Street, Suite 100
Delaware, Ohio 43015

For Appellee

NO APPEARANCE

For Appellant Grandmother R.H.

ALLISON MACLEOD-OWEN
110 East Elm Street, Suite B
Granville, Ohio 43023

*Wise, John, J.*

{¶1}    Appellant R.H. appeals the decision of the Licking County Court of Common Pleas, Juvenile Division, which terminated Appellant's parental rights and granted Licking County Department of Job and Family Services' ("Agency") motion for permanent custody of E.H. The following facts give rise to this appeal.

**FACTS AND PROCEDURAL HISTORY**

{¶2}    E.H. was born on August 28, 2018. J.H. is the biological mother of E.H.; B.H is the biological father of E.H. Appellant is the maternal grandmother of E.H.

{¶3}    E.H. was found to be a neglected and dependent child.

{¶4}    On March 19, 2019, E.H. was removed from the care of J.H. and B.H.

{¶5}    On February 19, 2020, the Agency filed for permanent custody of E.H.

{¶6}    On September 28, 2020, the trial court held a hearing on the State's Motion for Permanent Custody before the Magistrate.

{¶7}    At the hearing, Jennifer Newton testified that she has been the foster mother of E.H since April 4, 2019. When E.H. first came to live with the Newtons, he was on oxygen, underweight, and fragile. E.H. had bronchial pulmonary dysplasia from scar tissue in his lungs from being on a ventilator when he was born twenty-eight weeks premature. E.H.'s half-brother, D.H., lives with the Newtons. D.H. came to the Newton house on June 19, 2020.

{¶8}    E.H. is currently in weekly speech therapy and physical therapy twice a month. E.H. also has medical appointments for eczema and early cerebral palsy. J.H. was not approved or permitted to attend the appointments.

**{¶9}** Next, Allison Keeley testified she was employed by Licking County Children Services as a social worker until December of 2019. Ms. Keeley has been involved in E.H.'s case since April of 2019. The Agency became involved in E.H.'s case due to substance abuse by the parents, lack of financial stability, poor living conditions and neglect.

**{¶10}** On April 18, 2019, a case plan for E.H.'s parents was filed. The issues identified in the case plan were income, housing, substance abuse, couples counseling, mental health and employment. At the time of filing, J.H. reported domestic violence between her and E.H.'s father.

**{¶11}** E.H. was born twenty-eight weeks premature. His parents were not following through on his medical appointments. Initially, the parents were living in Newark, Ohio, but were evicted from their residence. E.H.'s parent's relationship was on and off, and they never attended couples counseling.

**{¶12}** After eviction, J.H. had no permanent address. J.H. reported to the Agency that she was beginning work at a McDonald's; however, the McDonald's said she was not working for them. J.H. claimed no other employment. J.H. also claimed she was engaging in alcohol and drug abuse treatment at NYAP. However, NYAP confirmed she went through the intake process, but never engaged in treatment. J.H. confirmed to the Agency that she was still using cocaine and methamphetamine.

**{¶13}** During an in-home visit, Ms. Keeley noted that J.H. would not allow them past the entryway of the home. J.H. said they were being evicted and everything was packed up.

**{¶14}** After B.H. was evicted from his residence in Newark, Ohio, he did not report another permanent address. B.H. followed through on alcohol and drug treatment. B.H. admitted to using cocaine and marijuana.

**{¶15}** The Agency looked to place E.H. with J.H.'s mother Appellant. The Agency decided against placement with Appellant due to Appellant's own history with the Agency and reports of mold in Appellant's home. When Appellant and Ms. Keeley spoke about E.H. going to live with Appellant, Appellant said she can buy a new house so mold won't be an issue.

**{¶16}** Next, Phaedra Abdalla testified that she is a visitation coordinator with the Agency. She supervises visits, intervenes as needed, and takes notes. J.H. had been removed from the visitation schedule because she had three no-show visits in a row. Her visitation was rescheduled for August 27, 2019.

**{¶17}** During the visits, J.H. actively participated by playing with E.H., bringing him snacks, and changing diapers. She was generally pleasant and respectful.

**{¶18}** During Appellant's portion of the visits, Ms. Abdalla stated Appellant was overbearing. She was bossing people around and hindering J.H.'s visit with E.H.

**{¶19}** Next, J.H. testified she is currently living in Newark, Ohio with a friend of her father. No formal lease or contract exists for housing. J.H. testified she completed her initial drug and alcohol assessment, but when she returned to engage in treatment, her counselor had left and they failed to assign her a new counselor.

**{¶20}** J.H. testified she was placed in temporary custody of Franklin County Children's Services at the age of thirteen or fourteen. She was briefly reunited with Appellant at age sixteen, but was back in Franklin County Children's Services custody

until age eighteen. J.H. had run away from home and was hit with a belt by Appellant. J.H. testified to possible use in the last three months of methamphetamine. J.H. testified E.H.'s father has hit her on three occasions.

**{¶21}** J.H. currently lives with her boyfriend at a family friend's house. There is no formal contract in place. J.H. did not inform the Agency of her new residence, the identity of her boyfriend, or that she is living with her boyfriend.

**{¶22}** J.H. also testified to her employment history. She stated she worked a couple shifts at a pizzeria, worked at Club 2k, and would be paid for singing, dancing, and rapping. She has not had any income in the last thirty days. J.H. has stayed with Appellant recently. Appellant has provided some support to J.H.

**{¶23}** The hearing was continued to October 13, 2020.

**{¶24}** At this hearing, a motion was made to allow Appellant to attend visitations with E.H. The trial court granted this motion.

**{¶25}** J.H. failed to appear at the hearing, and her counsel moved for a continuance. The continuance was denied.

**{¶26}** Bridget Lorenz Lemberg testified she is the lab director and toxicologist at Forensic Fluids Laboratories in Kalamazoo, Michigan.

**{¶27}** Forensic Fluids Laboratories performed drug tests on J.H. In May of 2019, J.H. tested positive for amphetamine and methamphetamine. In August of 2019, J.H. tested positive for amphetamine, methamphetamine, and marijuana. In September of 2019, J.H. did not test positive for any controlled substance. In December of 2019, J.H. tested positive for marijuana. In January of 2020, J.H. testified positive for amphetamine, methamphetamine and marijuana. In February of 2020, J.H. tested positive for

amphetamine and methamphetamine. In March of 2020, J.H. tested positive for amphetamine and methamphetamine. In June of 2020, J.H. tested positive for methamphetamine and cocaine. In July of 2020, J.H. tested positive for amphetamine and methamphetamine. In August of 2020, J.H. tested positive for amphetamine and methamphetamine.

**{¶28}** Forensic Laboratories also conducted drug testing of B.H. In June of 2019, he tested positive for amphetamine, methamphetamine, marijuana, and cocaine. In August of 2019, he tested positive for amphetamine, methamphetamine, and marijuana. In September of 2019, he did not test positive for any controlled substance. In November of 2020, he tested positive for amphetamine and methamphetamine. In December of 2020, he tested positive for marijuana. In January of 2020, he tested positive for marijuana. In February of 2020, he tested positive for marijuana. In March of 2020 he tested positive for marijuana and cocaine. In June of 2020, he tested positive for marijuana. In August of 2020, he tested positive for marijuana.

**{¶29}** Next, Palma Ashcraft testified she is a social worker with the Agency. E.H. was born addicted to cocaine and marijuana. E.H. was removed from the care of J.H. and B.H. over concerns of hospitalization from nonorganic failure to thrive and losing a significant amount of weight. Neither J.H. nor B.H. were following through on recommendations during hospital admissions. The Agency was also concerned over home conditions, unemployment of J.H., parenting, substance abuse, and mental health.

**{¶30}** Ms. Ashcraft reviewed the case plan with J.H. and B.H. J.H. had to obtain stable housing and employment, undergo substance abuse treatment, mental health

treatment, couples counseling, and resolve traffic and legal issues. From June of 2019 until April of 2020, J.H. had no stable residence.

**{¶31}** Ms. Ashcraft visited J.H.'s current residence in Newark on September 29, 2020. Ms. Ashcraft described it as appropriate. However, the Agency has concerns over J.H.'s boyfriend, Je.H. He has current felony charges against him for theft. J.H. does not have a contract with the landlord. The Agency is concerned with J.H.'s housing at this time.

**{¶32}** J.H. did not disclose employment until January of 2020, when she worked at Hendoc's pub in Columbus and picked up odd jobs on TaskRabbit until February of 2020. From June of 2020 until August of 2020, she reported working at a pizzeria and Club 2k, but never produced verification. Next, she claimed she traveled out west with a friend delivering cantaloupe and watermelon to Colorado, but did not disclose if or how much she was paid. J.H.'s employment is still an issue for the Agency.

**{¶33}** Appellant claimed she attended substance abuse classes at BHP in Mount Vernon, Ohio, but when Ms. Ashcraft called to verify, they said that they had never heard of her. J.H. never sought treatment for substance abuse or mental health as required by her case plan. J.H. took thirteen drug tests over the course of the case plan, and tested positive for methamphetamines in a majority of them. J.H.'s substance abuse and mental health is still an issue for the Agency.

**{¶34}** J.H. did complete parenting classes. However, her attendance at visitations with E.H. were not consistent. If all three boys were in attendance, it was very chaotic, and hard for her to handle all three children. Now that her visits are only with E.H., it is easier for her. J.H.'s behavior during the visits is not an issue for the Agency.

**{¶35}** During one visitation, Ms. Ashcraft gave B.H. a ride from drug testing to visitation one day. Upon arrival Appellant took pictures, and then J.H. arrived to videotape and yell at Ms. Ashcraft and B.H. J.H. was yelling obscenities until Appellant told her to get in Appellant's car and they pulled away.

**{¶36}** B.H.'s case plan included obtaining stable housing, obtaining stable employment, completing drug and mental health treatment, taking parenting classes, couples counseling, and resolve any legal or traffic issues.

**{¶37}** After B.H.'s eviction from his residence in Newark, he stayed with friends for several months. Then he moved to Massachusetts to live with his dad. He then moved back to Newark in August of 2020. He now lives with J.H.'s foster brother. The residence is a three-bedroom duplex. His two sons live with him. He sleeps on the couch, and there is not a room for E.H. B.H. has an agreement with J.H.'s brother, no lease or contract. B.H.'s housing is still a concern for the Agency.

**{¶38}** B.H. claims employment with Amazon, but has not verified his employment. The issue of B.H.'s employment is still a concern of the Agency.

**{¶39}** B.H. attended substance abuse treatment in Ohio. This stopped due to COVID. At the beginning, B.H. was testing positive for methamphetamine, but by the end of the case he mainly tested positive for marijuana. B.H. has indicated he does not recognize marijuana as an illegal substance and has no plans to stop using it. Substance abuse and mental health are still a concern for the Agency.

**{¶40}** The Agency has identified Appellant as a possible relative for placing E.H. The Agency ruled out Appellant because of her past agency involvement and conversations Ms. Ashcraft had with her. Appellant had told Ms. Ashcraft that E.H. spent

substantial time with her. She cared for him frequently. This led Ms. Ashcraft to have concerns that she didn't identify the situation and remove E.H. from the situation. She should have noticed his weight loss and that he was not receiving the care he needed. Appellant has a history of physical abuse which led to Appellant's removal from her home.

**{¶41}** Appellant's initial home was also deemed unsuitable as there were black mold issues.

**{¶42}** Appellant was present at the hospital during E.H.'s hospitalization more than either parent. Appellant was a trusted source of care for E.H. when his siblings were sick. Appellant obtained a new residence, but it was never inspected.

**{¶43}** No other family members have been identified as suitable for placement. E.H. has been diagnosed with early cerebral palsy.

**{¶44}** E.H. is currently living with Jennifer and Jason Newton in a foster-to-adopt placement. They are interested in adopting if permanent custody is granted to the Agency. He is with his older sibling D.H. and has three foster siblings. All of his special needs are being met by the Newtons.

**{¶45}** The Agency does not believe either parent has alleviated or will alleviate the concerns giving rise to the dependency finding in the near future. E.H. cannot be placed with either parent in the near future. It is in the Agency's opinion that granting permanent custody is in the best interest of E.H.

**{¶46}** Next, Cedric Collins testified that he is the Guardian ad Litem for E.H. He has observed E.H. in his foster home and has observed that he is doing very well. Initially, E.H. had many medical issues, was on oxygen, had significant weight loss, and was not developing. Now he is growing, gaining weight, off oxygen, and walking.

**{¶47}** Mr. Collins still has concerns regarding B.H.'s and J.H.'s ability to parent E.H. Specifically, they are still using illegal substances, they are not financially stable, they do not have stable housing, and all these are important for a child with special needs.

**{¶48}** Mr. Collins looked into placement with Appellant. He went to Appellant's home, observed most everything a child of E.H.'s age would need. However, the stairs to the basement did not have a railing to prevent a child from falling, which is important for a child with special needs. She was not fully unpacked and boxes still needed put away. Appellant was receiving partial retirement, but also working to meet her own needs. Mr. Collins was concerned about meeting the needs of E.H. Appellant needs a better support system if she were to take custody of E.H.

**{¶49}** Mr. Collins is concerned that given Appellant bond with E.H., she should not have given him back to the parents when so many issues existed without calling the Agency. The Guardian ad Litem testified it would be in the child's best interest to grant the Agency permanent custody of E.H.

**{¶50}** The trial court then recessed until November 23, 2020.

**{¶51}** At the November 23, 2020 hearing, the trial court heard a motion on granting legal custody to Appellant.

**{¶52}** Appellant testified she is E.H.'s maternal grandmother. She owns her own home with four bedrooms and two bathrooms. E.H. will have his own bedroom. Appellant is on unemployment due to COVID.

**{¶53}** Appellant has a conviction for disorderly conduct. She took her dog to a bingo hall. She parked the car in the shade and put the windows down. She testified the dog had water and food. She went into the bingo hall and came out after forty-five minutes

to check on the dog. She got into an altercation with officers when they tried to get her to leave the bingo hall to take care of the dog.

**{¶54}** Appellant testified J.H. had behavioral issues in her youth, but she does not recall beating J.H. with a belt. She said that J.H. is still lying about Appellant's abuse.

**{¶55}** The hospital discharged E.H. to Appellant after he was born, as two of his siblings were sick. After returning E.H. to his parents three days later, E.H. was in the hospital with a respiratory issue. Again, the hospital discharged E.H. to Appellant. J.H. and the children stayed with Appellant for four days until J.H. wanted to go back to live with B.H. Appellant did not agree with this and did not want to take the children back. J.H. called the police and told them Appellant kidnapped her children. When the police arrived, they wanted to know why Appellant did not want to give the children back. She said because the parents were fighting.

**{¶56}** Three weeks after the incident, E.H. went back into the hospital. Appellant stayed with E.H. at the hospital.

**{¶57}** With relation to the incident with Ms. Ashcraft at a visitation, Appellant said she saw B.H. in Ms. Ashcraft's car, and it did not seem right to her. Then J.H. finished her visitation and got angry with Ms. Ashcraft and B.H.

**{¶58}** Appellant has had three visits with E.H. She believes E.H. is enjoying his time with her. She does not believe removing E.H. from his foster home would traumatize him.

**{¶59}** Appellant believes it is in the best interest of E.H. to be placed with her. She is his grandmother, has been part of his life since he was born, she believes she can

provide a home for him and support him. Her support network has not met E.H. due to his being hospitalized and then placed into foster care.

**{¶60}** Next, Palma Ashcraft retook the stand. Ms. Ashcraft testified she has not spoken with Appellant about E.H.'s medical care. Appellant has only information provided by J.H. or B.H.

**{¶61}** Ms. Palma observed Appellant's visits with E.H. Appellant would play and sing to E.H. E.H. looked to be enjoying himself, but after the visit he wanted to get away from the visitation staff and back to his foster mom.

**{¶62}** Ms. Palma also testified that with Appellant's history of physical abuse, it is not in the best interest of E.H. to be placed with her. Ms. Palma also notes Appellant's work schedule would require E.H. to be shuffled around from Appellant to either her friend or her nephew. Ms. Palma does not believe this is a good situation for a child with special needs.

**{¶63}** Mr. Collins then testified that he still believes it is not in the best interest of E.H. to be placed with Appellant. Mr. Collins is concerned about Appellant's financial position. He also believes E.H. is bonded to his foster family. Mr. Collins disagrees with Appellant that removing E.H. from his foster family would not be traumatizing. E.H. has bonded significantly with his foster family, and any removal will have an impact on the child, especially removing him from his foster mother. He believes it is in the best interest of E.H. to be placed in the Agency's permanent custody.

**{¶64}** On February 18, 2021, the Magistrate issued a decision denying Appellant legal custody of E.H., and granting permanent custody of E.H. to the Agency.

**{¶65}** On March 3, 2021, Appellant objected to the Magistrate's Decision.

**{¶66}** On March 4, 2021, Appellant objected to the Magistrate's Decision.

**{¶67}** On March 1, 2022, the trial court adopted the decision of the Magistrate above Appellant's and Appellant's objections.

**{¶68}** On March 28, 2022, Appellant filed a Notice of Appeal.

**{¶69}** On May 25, 2022, Appellant filed a merit brief with this Court.

**{¶70}** On June 17, 2022, this Court granted Appellee's Motion for Extension of Time to file a Brief.

**{¶71}** Appellee did not file a merit brief arguing Appellee's case.

**ASSIGNMENT OF ERROR**

**{¶72}** Appellant timely filed her notice of appeal and raises the following two Assignment of Error:

**{¶73}** "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO AGENCY WHEN THE MANIFEST WEIGHT OF THE EVIDENCE SUPPORTED THE CONCLUSION THAT A LEGALLY SECURE PERMANENT PLACEMENT COULD BE ACHIEVED IN MATERNAL GRANDMOTHER, [APPELLANT]'S CUSTODY WITHOUT THE GRANTING OF PERMANENT CUSTODY AND TERMINATION OF PARENTAL RIGHTS.

**{¶74}** "II. THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION FOR LEGAL CUSTODY TO GRANDMOTHER AND AWARDING LEGAL CUSTODY TO THE AGENCY."

**I., II.**

**{¶75}** We address Appellant's assignments of error together. Appellant argues the trial court erred in denying Appellant's motion for legal custody and granting permanent custody to the Agency. We disagree.

**{¶76}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. We must determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). When reviewing for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered." *Matter of A.D.*, 5th Dist. Guernsey No. 19 CA 20, 2019-Ohio-3671, ¶9.

**{¶77}** A trial court may award legal custody to a non-parent after finding that legal custody is in the child's best interests. R.C. 2151.353(A)(3); R.C. 2151.415(B); *Stull v Richland Cty. Children Services*, 5th Dist. Richland Nos. 11CA47 and 11CA48, 2012-Ohio-738, 71 N.E.3d 660, ¶22. The court's determination as to whether the facts make it

in the child's best interest to be placed in legal custody, an appellate court applies the abuse of discretion standard. *Id.*

**{¶78}** In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶79}** "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. §2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶80}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal vs. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties'

demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 1997-Ohio-260, 674 N.E.2d 1159.

**{¶81}** This Court set forth a trial court's analysis of a permanent custody motion in *In the Matters of: A.R., B.R., W.R.*, 5th Dist. Stark Nos. 2018CA00091, 2018CA00097, 2018CA00098, 2019-Ohio-389. When deciding a motion for permanent custody a trial court must follow guidelines provided in R.C. §2151.414. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶82}** R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and no relatives of the child are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children's services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period.

**{¶83}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C.

§2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶84} In the case *sub judice*, the trial court found E.H. has been in the custody of the Agency for longer than twelve (12) of the last twenty-two (22) consecutive months. Pursuant to R.C. §2151.414(B)(1)(a), the trial court also found E.H. could not be placed with either of the parents within a reasonable time or should not be placed with E.H.'s parents.

{¶85} In making this decision, the trial court must consider the factors of R.C. §2151.414(E), which states, in relevant part:

(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence at a hearing held pursuant to division (A) of this section or for purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be

placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when

able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

***

(16) Any other factor the court considers relevant.

**{¶86}** In determining whether the child can be placed with either parent within a reasonable time, the court stated that it had considered all relevant evidence and all factors specifically enumerated in R.C. §2151.414(E). Based on the testimony presented, the trial court found that E.H. had been in temporary custody of the Agency for more than twelve months out of a consecutive twenty-two-month period.

**{¶87}** The trial court further found that efforts made by the Agency to work with the parents of E.H. have been reasonable and appropriate and followed E.H.'s best interest. The Agency used reasonable efforts to prevent the removal of E.H. from the home, to remedy the conditions that led to removal of E.H., and to make it possible for E.H. to return home. Specifically, the trial court found these reasonable efforts based on the following actions taken by the Agency: identified areas of concern related to J.H. and B.H., the need to address substance abuse and mental health issues, stability of housing and income, and demonstrate appropriate parenting practices, facilitation of visits with Appellant, B.H., and J.H., foster placement, and case planning for both B.H. and Appellant.

**{¶88}** "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5ᵗʰ Dist. No.

2000CA0024, 2000 WL 1700073 (Nov. 13, 2000), *citing In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶89}  In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D)(1) requires the trial court must consider all relevant factors, including, but not limited to the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section

apply in relation to the parents and child.

**{¶90}** No one element is given greater weight or heightened significance. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

**{¶91}** "A child's best interest are served by the child being placed in a permanent situation that fosters growth, stability, and security. *In re P.S.*, 5th Dist. Licking No. 16-CA-11, 2016-Ohio-3489, ¶57. A relative's willingness to care for the child does not alter the court's considerations in deciding permanent custody. *Id.*

**{¶92}** The trial court's decision indicates it considered the best interest of the child. The trial court concluded the child's need for legally secure placement could not be achieved without awarding permanent custody to the Agency. Upon review of the entire record, it is clear that the record supports the trial court's finding that granting the motion for permanent custody is in the child's best interest.

**{¶93}** J.H. exposed E.H. to J.H.'s substance abuse, lack of stable housing, domestic violence, and mental health issues. E.H. was born twenty-eight weeks premature, addicted to marijuana and cocaine. E.H. has been diagnosed with early cerebral palsy and had to be hospitalized due to weight loss and lack of development. J.H. did not complete substance abuse and mental health courses and consistently tested positive for controlled substances, mostly marijuana and methamphetamine. J.H. never obtained steady employment or secured appropriate, stable housing. B.H., while attending substance abuse classes, does not acknowledge the illegality of marijuana and has no intention of quitting. B.H. was not present at the hearings for permanent custody

or legal custody. B.H. has acknowledge that he is not in a position to care for a child with special needs.

{¶94} The Agency also explored placing E.H. with Appellant. Appellant, E.H.'s maternal grandmother, moved to request legal custody of E.H. The trial court found Appellant had failed to recognize and appreciate the significant ties E.H. has with his foster family. E.H. has a limited relationship with Appellant, and while the trial court noted Appellant cares for the child, E.H. turns to his foster family for reassurance and comfort. E.H.'s special needs have affected his ability to bond with Appellant

{¶95} E.H. shows visible excitement when around his foster parents and siblings, and displays trust and ease towards them. His foster parents have managed his cerebral palsy and he is thriving under their care. They ensure he attends all therapy and medical appointments and are well versed in his special needs. The foster parents have a safe, stable home, and are committed to E.H. and desire to adopt him. The trial court found that E.H.'s best interests will be served by denying Appellant's motion for legal custody and granting the Agency permanent custody.

{¶96} The guardian ad litem recommended permanent custody be granted to the Agency because E.H. could not be safely reunited with the parents. He has concerns about Appellant financially meeting the needs of herself and E.H., and that E.H. has bonded significantly with his foster family.

{¶97} We find that the trial court's determination that permanent custody to the Agency was in the child's best interest was based upon competent, credible evidence, and was not against the manifest weight of the evidence. The trial court did not abuse its

discretion in finding it was not in the child's best interest to be placed in Appellant's legal custody.

**{¶98}** Appellant's first and second Assignments of Error are overruled.

**{¶99}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division of Licking County, Ohio, is hereby affirmed.

By: Wise, John, J.

Wise, Earle, P. J., and

Hoffman, J., concur.

JWW/br 0830